## Evans *v.* American Natural Gas Company, Appellant.

*Deed—Gas company—Pipe line—Agreement with owner—Eminent domain—Entire and severable contract.*

Where a landowner, in consideration of receiving natural gas for his premises at a fixed price, grants to a gas company the right to lay and maintain a pipe line through and under his land, and the right to construct and operate a telegraph or telephone line over his land, the gas company cannot, by a mere notice of its intention to maintain its pipe line by the right of eminent domain, and not thereafter supply gas at the price fixed by the contract, place itself in a position to cut off the supply of gas; and if it attempts to do so it will be enjoined. In such a case, if the gas company desires to exercise the right of eminent domain, it must indicate its intention to surrender or abandon all of the rights in the property of the grantor which it acquired by virtue of the grant.

Argued May 5, 1913. Appeal, No. 211, April T., 1913, by defendant, from decree of C. P. Indiana Co., Dec. T., 1911, No. 1, on bill in equity in case of William A. Evans v. American Natural Gas Company and Indiana County Gas Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

TELFORD, P. J., found the facts to be as follows:

1. Both defendant companies are corporations existing under the act of assembly entitled: "An Act to provide for the incorporation and regulation of natural gas companies," approved May 29, 1885.

2. By deed dated August 3, 1909, the Indiana County Gas Company, sold, conveyed and assigned unto the American Natural Gas Company, some sixty odd oil and gas leaseholds, in the county of Indiana, together with certain gas wells thereon, and the pipe lines leading from said wells to the points of consumption of the gas produced in said wells; "also the rights of way, easements and privileges for the laying and maintaining of the aforesaid pipe lines and mains." And shortly thereafter the American Natural Gas Company took possession of said property and has continued to operate said gas wells and transport the gas produced therefrom to market, using the pipe lines and mains so purchased by it.

3. By agreement dated December 22, 1891, the plaintiff, William A. Evans, and the Indiana County Gas Company, entered into an agreement by which, in consideration of the Indiana County Gas Company agreeing to furnish the plaintiff with a supply of gas for fuel and light in his house and other buildings, including the barn, on the farm on which he then resided, in White township, Indiana county, at one-third the rate that was or might be at any time thereafter charged by said company for furnishing the people of the borough of Indiana for light and fuel, the plaintiff granted and let unto said Indiana County Gas Company, the right of way to lay and maintain pipe lines, construct and maintain a telegraph or telephone line, and operate the same over and through his lands in said White township. The Indiana County Gas Company, under said agreement, constructed its pipe line through said land, and said pipe line is a part of the system of pipe lines sold by it and now in possession of the American Natural

118 EVANS *v.* AMERICAN NAT'L GAS CO., Appellant.

Statement of Facts—Decree of Court below.   [55 Pa. Superior Ct.

Gas Company, as stated in the preceding finding of fact.

4. About July 18, 1911, the American Natural Gas Company notified the plaintiff that it claimed the right to maintain its pipe line through the land of plaintiff, for the transportation and supply of natural gas, in pursuance of its power of eminent domain, and that it would not be bound by any contract by which gas was to be supplied as a consideration for said right of way, without cost, or at a reduced rate, and said American Natural Gas Company therewith tendered its bond to the plaintiff and notified him that the said bond would be presented to the court of common pleas of Indiana county, on September 4, 1911, for approval, as provided for under the aforesaid act of assembly, under which said company is incorporated.

The court entered the following final decree:

And now, to wit, March 24, 1913, this cause having come on for final hearing and the exceptions filed to the decree nisi having been disposed of, a final decree is entered in accordance with the findings of the court as follows:

1. That the defendant, the American Natural Gas Company, is ordered and decreed to specifically perform and carry out the contract mentioned in paragraph three of the plaintiff's bill according to the terms thereof.

2. That a perpetual injunction issue restraining the defendant, the American Natural Gas Company, from further proceeding under claim of right of eminent domain.

3. That a perpetual injunction issue restraining the defendant, the American Natural Gas Company, its agents and employees, from turning off the gas to be used by the plaintiff for fuel and light under the terms of the contract, plaintiff's exhibit "A," while the pipe line through his farm remains, and that it shall permit the plaintiff, William A. Evans, to take all the natural gas provided to be delivered to him under the terms of

said contract upon the conditions, prices and stipulations therein contained.

4. That the defendant, the American Natural Gas Company, pay the costs of this proceeding.

5. As to the defendant, the Indiana County Gas Company, this bill is dismissed.

Now March 24, 1913, the American Natural Gas Company except to the final decree in this case. An exception is allowed and bill accordingly sealed.

The court erred in dismissing appellant's first exception to the decree nisi, which exception is as follows:

"First. The prothonotary erred in the first paragraph of said decree, which paragraph excepted to is as follows: '1. That the defendant, the American Natural Gas Company, is ordered and decreed to specifically perform and carry out the contract mentioned in paragraph three of the plaintiff's bill according to the terms thereof.'"

The court erred in dismissing appellant's second exception to the decree nisi, which exception is as follows:

"Second. The prothonotary erred in the first paragraph of said decree, which paragraph excepted to is as follows:"

*Error assigned* was the decree of the court.

*Walter Lyon,* of *Lyon & Hunter,* with him *Cunningham & Fisher,* for appellant.—The company had a right to condemn notwithstanding the previous agreement: Semple v. R. R. Co., 172 Pa. 369; Kenny v. Ry. Co., 208 Pa. 30; Dougherty v. Rys. Co., 213 Pa. 346.

*J. N. Banks,* with him *S. M. Jack, Peelor & Feit, Ernest Stewart* and *John H. Pierce,* for appellee.

Opinion by Head, J., October 13, 1913:

It may be conceded there is no privity of contract between the plaintiff and the defendant appellant. There has existed, however, and does now exist a privity

of estate.   That estate, in the lands of the plaintiff, which the appellant now possesses and enjoys was created by a contract between the plaintiff and the Indiana County Gas Company, the predecessor in title of the appellant, and the remaining defendant in the bill. That contract was a simple and entire one.   By its terms the plaintiff granted to the company last named the right to lay and maintain a pipe line for the transportation of gas through and under his land.   That contract was made in 1891.   The consideration for the estate thus granted was the delivery to the plaintiff each and every year, so long as the grant continued, of gas for his premises at a fixed price.   The contract was duly recorded in the proper office of the county and was promptly executed by the construction of the pipe line therein contemplated.   The company grantee, during a number of years, continued to possess and enjoy the rights it thus obtained and regularly returned the annual compensation it had agreed to make.   The contract by its terms enured to the benefit of the successors or assigns of both the parties respectively.

In 1909 the Indiana County Gas Company sold and conveyed to the American Natural Gas Company, the appellant, its wells, pipe lines, rights of way and other property, including that it had obtained by the grant aforesaid from the plaintiff.   That company entered into possession, and from that time down to the filing of this bill and to the present moment, so far as this record shows, has continued to exercise and enjoy all of the rights in the property of the plaintiff which passed by his grant to its predecessor in title.   From the same time down to the period of the notice next to be referred to it continued, without objection, to render to the plaintiff the compensation stipulated for in the contract under which it took and lawfully holds its easement or estate in his lands.   It ought to be added that the grant referred to vested in the grantee, and therefore in the present appellant, not only the right to

lay and maintain a pipe line, but also the right to construct, maintain and operate a telegraph or telephone line which was duly constructed.

In 1911 the appellant company appears to have determined that it was no longer to its interest or advantage to pay the stipulated compensation for the grant in the manner therein provided. In an attempt to relieve itself of that obligation, it caused to be served on the plaintiff a written notice of which the following is a copy:

"You will please take notice that the American Natural Gas Company claims the right to maintain its line of pipe through your land in White township, Indiana county, Pa., for the purpose of transportation and supply of natural gas for public consumption in pursuance of its power of eminent domain, and will not be bound by any contract by which gas is to be supplied as a consideration for said right of way without cost or at a reduced rate, and any gas supplied upon said land from said pipes must be at the uniform established rate charged by said company and under a written contract which must be uniform with other consumers and which must be signed on or before July 31, 1911."

It further appears in the bill, and is not denied, that at the same time an additional notice was served on the plaintiff that the defendant would present, on a day named, a bond to the court of common pleas of Indiana county, and thereafter, on the day named, did present to said court a petition "for leave to file said bond for the purpose of maintaining said pipe line through said land of your orator under right of eminent domain." The bill, further averring an intention on the part of the defendant to shut off the plaintiff's supply of gas if he refused to accede to its terms, prayed for an injunction. In due course a final injunction was decreed and the defendant appeals.

It is clear the present appellant, as well by the terms of the contract under which the pipe line was laid and

maintained as under the law generally, could not be compelled to continue to hold the rights granted and pay the annual compensation stipulated therefor longer than it chose to do so. If it should elect, as its predecessor did, to exercise its right to sell its pipe line and the easement under which it is maintained, the plaintiff would have no standing to interfere; and for the same reasons it may, when it chooses, surrender and abandon all of the rights in the plaintiff's property which it took by virtue of the grant and thus restore to him the full possession of his property, and again the latter would have no standing to object.

The simple question presented by this record is, may the defendant, in any lawful assertion of its right of eminent domain, continue to hold and enjoy the right to maintain and operate its pipe line and telephone line through the lands of the plaintiff and at the same time insist, as it does in its notice, that it will no longer be bound by that portion of the contract which fixes the compensation to be paid for the easement? If so, the effect of the operation would be to split what was an entire contract into a severable one; to divorce the compensation to be paid from the granted rights for which it was to be paid; and to use the right of eminent domain to convert into a liquidated sum of money, presently payable, the annual compensation which the parties had stipulated should be paid as long as the grant continued. We are of the opinion this cannot be done, and further that the precise question has been authoritatively decided against the contention of the appellant by the Supreme Court in Semple v. Railroad Co., 172 Pa. 369.

That case presented features which seemingly gave to the railroad company, as a public carrier, a stronger right to escape from some of the obligations of the contract under which it held its right of way than any that can be advanced by the appellant here. In that case the predecessor in title of the then defendant obtained

a right of way for its line through the property of the predecessors in title of the plaintiff. It also obtained, as part of the same grant, land upon which to construct a wood house and a water tank, and the right to supply the latter with water from a spring on the premises. The property owner agreed to build, on his own land, a suitable building for a depot or station house, and to provide a person to sell tickets, receive and deliver freight, etc., at the said station, and for this the company was to pay such compensation to the person provided by the owner as it paid to other persons where similar conditions existed. The company in the course of time found this obligation burdensome to itself and, as it alleged, greatly prejudicial to the rights and safety of the traveling public. It accordingly undertook to condemn the land on which the property owner had erected a station house, and the plaintiff filed a bill to enjoin that proceeding. The learned court below, in a forcible opinion, held that the portion of the original contract referred to was against public policy and dismissed the plaintiff's bill. The decree was reversed and the record remitted with direction to issue an injunction and afford certain other relief required by the particular facts of that case.

The language of Mr. Justice WILLIAMS, speaking for the court, is just as applicable to the situation presented by this record as it was in the case in which the opinion was delivered: "But the contract is an entire one. The consideration for all the rights secured by the railroad company under it is the price or commission to be paid to the landowner for his services as agent in the collection of freight and the sale of tickets at the depot being built or owned by him. The company cannot therefore rescind in part. It must stand on its contract rights or rescind in toto, and fall back upon its right of eminent domain to protect itself in the enjoyment of its right of way and the other rights acquired originally by the contract. Now the company has undertaken to

rescind in part. It retains possession of its way, its water supply, and the land acquired under the contract, but seeks to avoid the payment of the annual rental therefor by the condemnation of the depot building erected and occupied by the landowner. . . . Her (the plaintiff's) position is that so long as the company affirms the contract by holding all that it acquired under its provisions it cannot be allowed to rescind as to the one provision on which the compensation of the landowner rests. In other words, it cannot affirm as to what it was to receive, and rescind as to what it was to pay. We think the contention is correct, and that the bill presents a proper case for equitable relief." Applying that language and the principle it so emphatically expresses to the question presented by this record, we have left but little room for discussion.

It cannot be pretended that the notice of July 18 was a notice of the appellant's intention to surrender and abandon the property rights in the land of the plaintiff acquired under the contract to which it succeeded. No mention is made whatever of the right to operate the telegraph or telephone line that had been constructed; no notice that it no longer intended to maintain and utilize the pipe line and right of way in which it was buried. On the contrary, a distinct notice that it claimed the right to maintain the line under its power of eminent domain, and the further statement that it would not be bound by the contract referred to in so far as that contract required it to supply gas to the plaintiff at the stipulated price. The effect of this notice would be to leave, as the single subject upon which the defendant's right of eminent domain was to operate, that portion of the contract which the notice declared the company then repudiated. When the company shall have unequivocally indicated its intention to surrender or abandon all of the rights in the property of the plaintiff which it acquired by virtue of the grant so often referred to, it may be in a proper position to

condemn a right of way across the plaintiff's property. Under such circumstances it would not necessarily follow that the present line should be removed before the condemnation proceedings were begun. With the full control of the plaintiff's property restored to him, but upon a showing that proper proceedings had been begun to condemn a right of way through his property on the same location previously covered by the grant, a court of equity might interfere to prevent useless destruction of property. But in such event there would be no room for contention as to what was the subject upon which the defendant's right of eminent domain was to operate. This, however, is aliunde the question immediately before us and as to it we need not express any opinion.

It requires but a glance at the cases of Kenny v. Railway Co., 208 Pa. 30, and Dougherty v. Railways Co., 213 Pa. 346, to discover how readily they are distinguishable from Semple v. Railroad Co., 172 Pa. 369, and to conclude they are in no way in conflict with that case. We are of opinion, therefore, that an injunction properly issued to restrain the defendant from shutting off the plaintiff's supply of gas to enforce his acceptance of the proposed new conditions. We do not think the record presents a case for a general decree against the defendant for specific performance of the contract made between the plaintiff and the defendant's predecessor. The defendant is no party to that contract. It has succeeded to the rights conferred by that contract, and it must hold them as it took them cum onere. But it may relieve itself at any time of any obligation to further perform in the manner we have already indicated. The decree must therefore be modified by striking from it the first paragraph relating to specific performance, and as thus modified the decree is affirmed.